**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SUNIL SOODOO, | : | **Hon. Freda L. Wolfson** |
| | : | |
| Petitioner, | : | |
| | : | Civil No. 09-6497(FLW) |
| v. | : | |
| | : | |
| SCOTT WEBER, et al., | : | **OPINION** |
| | : | |
| Respondents. | : | |

**APPEARANCES**:

> SUNIL SOODOO, #A 042 163 853
> Buffalo Federal Detention Center
> 4250 Federal Drive
> Batavia, NY  14020
> Petitioner Pro Se

> PETER G. O'MALLEY, ASSISTANT U.S. ATTORNEY
> PAUL J. FISHMAN, U.S. ATTORNEY
> 970 Broad Street, Suite 700
> Newark, New Jersey  07102
> Attorneys for Respondents

**WOLFSON**, District Judge:

Sunil Soodoo, then confined at the Monmouth County Jail in Freehold, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention in the custody of the Department of Homeland Security ("DHS").  Respondents filed an Answer seeking dismissal of the Petition, together with the declarations of counsel and Deportation Officer Waveney L. Boyd, and several exhibits.  Having thoroughly examined the parties' submissions and considered their arguments, this Court will dismiss the Petition without

prejudice to the filing of another petition (in the district of confinement) in the event that the

Court of Appeals for the Second Circuit denies his petition for review, DHS fails to remove

Petitioner within the presumptively reasonable six-month period, and Petitioner shows that his

removal is not reasonably foreseeable.

## I.  BACKGROUND

Sunil Soodoo, a native and citizen of Guyana, South America, challenges his detention in

the custody of DHS pending a ruling by the Second Circuit on his petition for review of the

Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's order of

removal.  Soodoo was admitted to the United States as a lawful permanent resident on May 1,

1990.  On January 25, 1993, Soodoo was convicted of grand larceny in the fourth-degree in a

New York state court and sentenced to a one to three-year term of imprisonment.  On March 2,

2005, he was convicted of unlawful possession of marijuana in violation of section 221.05 of the

New York Penal Law.  DHS officials took Petitioner into custody on May 21, 2007 (presumably

upon his release from state prison on the marijuana conviction), in accordance with an

Immigration Detainer lodged on December 15, 2006, at Nassau County Correctional Center.[1]

On March 27, 2008, DHS served Petitioner with a Notice to Appear, charging him with

being a removable alien under sections 237(a)(2)(A)(i) based on conviction of a crime involving

moral turpitude committed within five years after admission for which a sentence of one year or

longer may be imposed, and 237(A)(2)(A)(iii) based on conviction of an aggravated felony, a law

---

[1] The detainer states that an investigation has been initiated to determine whether Petitioner is subject to deportation and advises state officials that 8 C.F.R. § 287.7 requires them to detain the alien for a period not to exceed 48 hours to provide adequate time for Immigration to assume custody.  (Docket Entry #9-3, p. 10.)

relating to a theft or burglary offense for which the term of imprisonment of at least one year was imposed, of the Immigration and Nationality Act ("INA"). Officials also served a Notice of Custody Determination in which the Supervisory Deportation Officer determined on March 19, 2008, that pending a final determination by the Immigration Judge and in the event removal is ordered, Petitioner would be detained pursuant to 8 U.S.C. § 1226; the notice indicates that on March 27, 2008, Petitioner received the notice and requested a re-determination of the custody decision by an Immigration Judge. (Docket Entry #9-3, p. 12.) An Immigration Judge appears to have subsequently affirmed Petitioner's detention pursuant to 8 U.S.C. § 1226. (Docket Entry #9-3, p. 15.) On July 10, 2009, Soodoo was served with additional charges warranting his being taken into custody and removed under section 237(a)(2)(B)(i) of the INA, i.e., conviction of a violation of any law relating to a controlled substance, other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

In various appearances before Immigration Judge Alan Page, Petitioner conceded his removability on the charges in the notice to appear, as amended (docket entry #9-3, pp. 15-16), and applied for § 212(c) relief, asylum, and withholding of removal pursuant to § 241(b)(3)(A) and Article 3 of the Convention Against Torture. On September 30, 2009, Immigration Judge Page denied Petitioner's requests for relief and ordered his removal on the basis of the charges in the Notice to Appear, as amended. (Docket Entry #9-3, pp. 14-29.) Petitioner appealed to the BIA. On January 29, 2010, the BIA affirmed the Immigration Judge's decision in a two-page opinion. (Docket Entry #9-3, pp. 33-34.)

On February 4, 2010, Petitioner filed a petition for review of the January 29, 2010, decision of the BIA, together with a motion for stay of removal. See Soodoo v. Holder, C.A. No.

3

10-0445 (2d Cir. docketed Feb. 4, 2010).  On March 10, 2010, Petitioner filed an amended petition for review and a motion to proceed in forma pauperis.  On August 16, 2010, DHS filed a brief.  According to the docket, the Second Circuit has yet to rule on the stay and the merits of the petition for review.  On September 3, 2010, Petitioner filed a second petition for review and motion for a stay in the Second Circuit, which were docketed in Soodoo v. Holder, C.A. 10-3551 (2d Cir. docketed Sept. 3. 2010).  On September 17, 2010, the government filed a motion to consolidate this matter with the first case.  Both cases are pending before the Second Circuit.

In the meantime, on April 19, 2010, Field Office Director Christopher Shanahan issued a decision of custody review which continued Soodoo's detention pending adjudication of the petition for review by the Second Circuit.  (Docket Entry #9-3, p. 36.)  The custody review decision states that "[t]here is a stay of removal in effect which precludes ICE [Immigration and Customs Enforcement] from effecting your removal while the PFR is being adjudicated." [2]  (Id.)  The decision further states that on "February 4, 2010, a travel document present package was completed and sent to the Embassy of Guyana in Washington, DC requesting their assistance in the issuance of a travel document.  A travel document was received on February 19, 2010 and is still valid."  (Id.)

Petitioner executed the § 2241 Petition (presently before this Court) on December 17, 2009.  The Clerk received and filed it on December 28, 2009.  Petitioner thereafter filed an

---

[2] The declaration of Deportation Officer Waveney L. Boyd dated May 17, 2010, states: "[Petitioner's] removal was scheduled for March 21, 2010, but has not been effectuated because ICE learned that Mr. Soodoo filed a petition for review with the Court of Appeals for the Second Circuit . . . and asked for a stay of removal.  []Although no stay order has been entered, it is ICE's policy in this district not to remove those aliens who have sought a stay pending review of their removal orders."  (Docket Entry #10, pp. 2-3.)

Amended Petition.  Petitioner contends that his indefinite detention is not statutorily authorized under Zadvydas v. Davis, 533 U.S. 678 (2001), and violates procedural and substantive due process.  This Court ordered the government to file an answer and copies of all relevant documents.  On May 18, 2010, DHS filed an Answer, together with declarations and exhibits, and Petitioner filed letters in November and December 2010.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his due process rights, see Zadvydas, 533 U.S. at 699.  See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

B.  Legality of Detention

The INA authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a).  Specifically, § 1226(a) provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
>   (1) may continue to detain the arrested alien; and
>
>   (2) may release the alien on –
>
>        (A) bond of at least $1,500 . . ; or
>
>        (B) conditional parole; but
>
>   (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

8 U.S.C. § 1226(a).[3]

---

[3] "The district director may . . . consider release from custody, upon such terms and conditions as the district director may prescribe, of any alien described in paragraph (c)(2)(ii) of this section who has been in the Service's custody for six months pursuant to a final order of deportation terminating the alien's status as a lawful permanent resident."  8 C.F.R. § 236.1(c)(6)(ii).  To be eligible for discretionary release, see 8 C.F.R. § 236.1(c)(6)(iii), such alien who is not subject to mandatory detention must "demonstrate, by clear and convincing evidence, that release would not pose a danger to the safety of other persons or of property.  If an alien meets this burden, the alien must further demonstrate, by clear and convincing evidence, that the alien is likely to appear for any scheduled proceeding . . . in order to be considered for release in the exercise of discretion."  8 C.F.R. § 236.1(c)(3).

Section 1226(b) provides that "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien."  8 U.S.C. § 1226(b).

However, for certain criminal aliens, § 1226(c) mandates detention during removal proceedings.  See 8 U.S.C. § 1226(c).[4]  In Demore v. Kim, 538 U.S. 510 (2003), the Supreme

---

[4] Section 1226(c) provides:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who--

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to

(continued...)

7

Court upheld the constitutionality of mandatory detention under § 1226(c), and ruled that such

mandatory detention during removal proceedings under § 1226(c) is a constitutionally

permissible part of the removal process.  "[T]he statutory provision at issue governs detention of

deportable criminal aliens *pending their removal proceedings*.  Such detention necessarily serves

the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal

proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully

removed."  Id. at 527-28.

"Except as otherwise provided in this section, when an alien is ordered removed, the

Attorney General shall remove the alien from the United States within a period of 90 days (in this

section referred to as the 'removal period')."  8 U.S.C. § 1231(a)(1)(A).  Section 1231(a)(2)

requires the Attorney General to detain aliens during the removal period:  "During the removal

period, the Attorney General shall detain the alien."  8 U.S.C. § 1231(a)(2); Zadvydas, 533 U.S.

at 683.  "The removal period shall be extended beyond a period of 90 days and the alien may

remain in detention during such extended period if the alien fails or refuses to make timely

application in good faith for travel or other documents necessary to the alien's departure or

---

[4](...continued)
> provide protection to a witness, a potential witness, a person
> cooperating with an investigation into major criminal activity, or
> an immediate family member or close associate of a witness,
> potential witness, or person cooperating with such an investigation,
> and the alien satisfies the Attorney General that the alien will not
> pose a danger to the safety of other persons or of property and is
> likely to appear for any scheduled proceeding.  A decision relating
> to such release shall take place in accordance with a procedure that
> considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231 (a)(1)(C).

Significantly, the removal period does not necessarily begin when the order of removal becomes administratively final. The removal period does not begin until the latest of several events occurs, one of which is the date the removal order becomes administratively final. See 8 U.S.C. § 1231(a)(1)(B). Specifically, § 1231(a)(1)(B) provides:

> The removal period begins **on the latest** of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

If DHS does not remove the alien within the removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In <u>Zadvydas</u>, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas</u>, 533 U.S. at 689.  The Court cautioned that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]." <u>Id.</u> at 699.  To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention.  <u>Id.</u> at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  <u>Id.</u> <u>See also</u> <u>Clark v. Martinez</u>, 543 U.S. 371, 384 (2005).

The above discussion demonstrates that the statutory authority to detain an alien depends on where the alien is in the removal process.  Section 1226(a) provides the Attorney General with discretionary authority to detain or to release aliens on bond or conditional parole prior to the removal period.  Section 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B), and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision.  <u>See</u> <u>Diouf v. Mukasey</u>, 542 F. 3d 1222, 1228 (9th Cir. 2008).  To determine which statute may authorize Petitioner's detention, this Court must determine the beginning of Petitioner's removal period under 8 U.S.C. § 1231(a)(1)(B).

As explained above, the removal period begins on the latest of three dates:  (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.  See 8 U.S.C. § 1231(a)(1)(B).  As option (iii) does not apply to Petitioner, his removal period either began on the date the order of removal became administratively final, i.e., January 29, 2010 [5], or the removal period will not begin until the Second Circuit issues a final order denying Mr. Soodoo's petition for review.  Since the removal order is being reviewed by the Second Circuit, whether or not the removal period has begun depends on whether a court has ordered a stay of Petitioner's removal within the meaning of § 1231(a)(1)(B)(ii).  The docket before the Second Circuit shows that Petitioner filed motions for a stay of the order of removal on February 4, 2010, and September 3, 2010, but the Second Circuit has not ruled on same.  Although the Third Circuit has not decided the issue, the Ninth Circuit has held that, to eliminate the risk that petitioners will be deported before their stay requests are decided, "[t]he filing of a motion for stay or a request for a stay contained in a petition for review will stay a petitioner's deportation temporarily until the court rules on the stay motion."  De Leon v. I.N.S., 115 F. 3d 643, 644 (9th Cir. 1997).  The Ninth Circuit explained its rationale:

---

[5] An order of removal becomes "final upon the earlier of –(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals."  8 U.S.C. § 1101(a)(47)(B).  Since the BIA affirmed the order of removal on January 29, 2010, that is the date Petitioner's order of removal became administratively final within the meaning of 8 U.S.C. § 1231(a)(1)(B)(i).

> [Section 1231(a)(1)(B)] is inartfully drafted, as one cannot say
> when the "latest" of the three events will occur until those events
> have either taken place or it is known that they can no longer ever
> take place.  Consequently, the time between an alien's filing of a
> petition for review and this court's issuance of a stay of removal
> falls within a lacuna in the statutory text.  We consider it unlikely
> that Congress would have intended that DHS's removal efforts
> begin as soon as an alien's removal order is administratively final,
> see §1231(a)(1)(B)(i), terminate when this court stays removal, see
> § 1231(a)(1)(B)(ii), and begin anew if and when we finally deny
> the petition for review.  The more sensible reading of the statute is
> that if an alien files a timely petition for review and requests a stay,
> the removal period does not begin until the court of appeals (1)
> denies the motion for a stay *or* (2) grants the motion *and* finally
> denies the petition for review.

Prieto-Romero v. Clark, 534 F. 3d 1053, 1060 n.5 (9th Cir. 2008) (emphasis in original).

This Court adopts the Ninth Circuit's rationale in Prieto-Romero and holds that Petitioner Soodoo is detained under § 1226(a), rather than § 1231, because § 1231(a)(1)(B)(ii) dictates that the removal period will not commence until and unless the Second Circuit denies his petition for review.[6]  See Contant v. Holder, 352 Fed. App'x 692 (3d Cir. 2009) (holding that, where § 2241 petitioner's 18-month detention was due to his own request to continue the removal proceeding pending a VISA application, and he remained capable of being removed in the event that a final decision on his removal was made, his detention was governed by § 1226(a), rather than § 1231); Castellanos v. Holder, 337 Fed. App'x 263 (3d Cir. 2009) (holding that habeas petitioner's 15-month period of detention was under § 1226(a), rather than § 1231, where the Second Circuit stayed his removal pending a final decision on his petition for review); Prieto-Romero v. Clark, 534 F. 3d 1053 (9th Cir. 2008) (holding that petitioner was detained under § 1226 rather than §

---

[6] It is clear Petitioner is not mandatorily detained under § 1226(c), as the Field Office Director reviewed his custody status on April 19, 2010.  (Docket Entry #9-3, pp. 36-37.)

12

1231 because he had obtained a stay of removal and was awaiting judicial review of his petition for review of an order of removal).  As the Third Circuit found in <u>Castellanos</u>, this Court finds that Mr. Soodoo's detention is not indefinite for three reasons.  First, he "is not stuck in a 'removeable-but-unremoveable limbo,' as the petitioners in <u>Zadvydas</u> were . . . .  To the contrary, the Government is ready and willing to remove [Soodoo] but must wait for a final order of removal to do so legally."  <u>Castellanos</u>, 337 Fed. App'x at 267 (internal quotation marks omitted) (quoting <u>Prieto-Romero</u>, 534 F. 3d at 1064).  Second, although Mr. Soodoo's "detention lacks a certain end date, the end is still reasonably foreseeable - the completion of removal proceedings." <u>Castellanos</u> at 268.  And third, Petitioner himself prolonged his detention by requesting the stay of his removal.  <u>Id.</u>  Because Petitioner is detained under § 1226(a) until the Second Circuit either denies his request for a stay or denies the petition for review, and his detention under § 1226)(a) is not indefinite, Petitioner does not fall under <u>Zadvydas</u>.  Moreover, as the Field Office Director has administratively reviewed Petitioner's discretionary detention under § 1226(a), Petitioner has not been denied procedural due process.

As Petitioner's detention is authorized by 8 U.S.C. § 1226(a) and does not violate due process, this Court will dismiss the § 2241 Petition and Amended Petition.  The dismissal is without prejudice to the filing of a new § 2241 petition (in the district of Petitioner's detention) in the event that the Second Circuit denies his petition for review, DHS is unable to remove Petitioner during the presumptively reasonable period under § 1231(a)(6), and Petitioner can show that his removal is not reasonably foreseeable.

**III.  CONCLUSION**

For the reasons set forth above, the Court will dismiss the Petition without prejudice.


   s/Freda L. Wolfson
**FREDA L. WOLFSON, U.S.D.J.**


DATED:   February 3, 2011

14